NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

SHEENA MAIETTA HOLMES, *Appellant*.

No. 1 CA-CR 25-0311

FILED 07-08-2026

Appeal from the Superior Court in Yavapai County
No. S1300CR202300835
The Honorable Krista M. Carman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Grand Canyon Law Group, LLC, Phoenix
By Victoria Wilde
*Co-Counsel for Appellant*

Law Office of Courtney R. Sullivan, PLLC, Phoenix
By Courtney R. Sullivan
*Co-Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Angela K. Paton and Judge Michael J. Brown joined.

---

**B A I L E Y**, Judge:

¶1            Sheena Maietta Holmes appeals her convictions and sentences for two counts of theft.  Holmes argues that the superior court erroneously denied her pretrial motions for severance and change of venue, that the State presented insufficient evidence to support her convictions, and that the prosecutor deprived her of a fair trial by asking improper questions on direct examination.  We detect no reversible error.  We therefore affirm.

### FACTS AND PROCEDURAL HISTORY

¶2            Holmes was indicted in Yavapai County for two counts of theft, against Yavapai Block Construction Company ("Yavapai Block") and The Coalition for Compassion and Justice ("the Coalition"), respectively.  Before the time set for trial, Holmes unsuccessfully moved to sever the counts.  She also unsuccessfully moved to change the venue.  Both counts proceeded to a joint jury trial in Yavapai County at which the State presented evidence of the following facts.[1]

¶3            In November 2021, Holmes began working as a finance clerk for Yavapai Block, a construction-supply company with a retail-store component.  As part of her duties, Holmes filled out deposit slips for all cash and checks received so that the company's president (or occasionally Holmes) could deposit those monies at the bank each evening.  Holmes also sometimes took cash deposits to the bank during the day.  Holmes' handwritten deposit slips were supposed to match the amounts tracked by the company's point-of-sale system.  But nobody other than Holmes checked the slips against the automated data until the company hired a new finance controller in January 2022.

---

[1]  We view the evidence in the light most favorable to upholding the verdicts.  *State v. Girdler*, 138 Ariz. 482, 488 (1983).

¶4 The new controller soon discovered discrepancies between the cash reported by the point-of-sale system and the cash deposited. The controller initially reported the discrepancies to the company's president in March 2022. Holmes left the company that same month. The controller then completed her reconciliation and determined that more than $33,000 in cash was received but not deposited between December 2021 (the month after Holmes began at the company) and March 2022 (the month Holmes left the company). The controller found no missing monies outside of that period.

¶5 Meanwhile, in April 2022, the Coalition, a non-profit organization serving the homeless, hired Holmes as its director of finance and human resources. The Coalition receives revenue via donations, thrift-store sales, affordable-housing rents, and shelter rents. Holmes' duties included performing daily financial reconciliations, making bank deposits, and preparing profit-and-loss reports for the organization's board of directors. For the thrift store, Holmes was responsible for retrieving each day's mostly-cash income from a drop safe, checking it against the store's point-of-sale system, and depositing it at the bank. She was similarly responsible for retrieving, reconciling, and depositing the all-cash shelter rents and the mostly-cash affordable-housing rents.

¶6 Holmes regularly presented financial reports to the Coalition's board. Her reports showed that the Coalition's account balances were very low. But the board members, trusting Holmes, simply assumed that the organization was struggling. Holmes never mentioned that any funds were unaccounted-for, and the board members never examined the underlying deposit records.

¶7 In March 2023, Yavapai Block's controller, at the company president's direction, reported the company's missing funds to the police and identified Holmes as a suspect. The police investigated Holmes, discovered her new employment, and contacted the Coalition. Based on that contact, the Coalition terminated Holmes' employment in May 2023 and hired an auditor. The auditor determined that between June 2022 and May 2023, more than $77,000 in cash received by the thrift store was not deposited in any Coalition account, and the same was true for more than $32,000 in affordable-housing rents and more than $1,000 in shelter rents. The auditor further determined that the discrepancies did not persist after Holmes left the organization.

¶8 Police arrested and interrogated Holmes in July 2023. She denied all wrongdoing. Later, at trial, she declined to testify or present

3

other evidence. The jury convicted Holmes on both counts, and the court sentenced her to five years' imprisonment for the theft from the Coalition followed by seven years' probation for the theft from Yavapai Block.

**¶9**          Holmes timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

I.     Holmes waived her severance request by not renewing it at trial, and the denial of her pretrial motion was not error in any event.

**¶10**          Holmes first contends that the superior court erred by denying her motion to sever the two charged counts. We hold that Holmes waived the issue.

**¶11**          Under Arizona Rule of Criminal Procedure 13.4(c), a defendant must renew his or her pretrial motion for severance at trial or else the right to severance is waived. We apply this rule strictly to prevent gamesmanship. *See State v. Flythe*, 219 Ariz. 117, 120, ¶¶ 9-10 (App. 2008). Here, Holmes waived her severance claim because she did not renew her pretrial motion.

**¶12**          Further, even if we review the pretrial denial of severance, we detect no fundamental error. *See id.* at ¶ 11 (indicating that we may, on request, review a waived severance issue for fundamental error). Reversible fundamental error is prejudicial error that goes to the foundation of the case, takes away an essential defense right, and is of such magnitude that it prevents a fair trial. *State v. Henderson*, 210 Ariz. 561, 568, ¶¶ 22, 24 (2005). Here, the court did not err, much less fundamentally err, by denying severance. Offenses may be joined in an indictment if they "are of the same or similar character" and "evidence of the other offense or offenses would be admissible if the offenses were tried separately." Ariz. R. Crim. P. 13.3(a)(1), 13.4(b). Here, each of the thefts involved skimming cash deposits, and evidence of each would be cross-admissible in separate trials to show Holmes' "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" under Arizona Rule of Evidence 404(b).

II.    The superior court properly denied Holmes' motion for a change of venue.

4

¶13 Holmes next contends that the superior court erred by denying her motion for a change of venue based on pretrial publicity. We review the ruling for an abuse of discretion. *See State v. Cruz*, 218 Ariz. 149, 156, ¶ 12 (2008). We detect none.

¶14 Pretrial publicity warrants a change of venue only if it is so pervasive as to create fundamental unfairness in the form of actual or presumptive jury prejudice. *Id.* at ¶¶ 13-14. The mere fact that jurors have been exposed to pretrial publicity is not dispositive; the court may find no actual prejudice if the jurors affirm in voir dire that they can decide the case based strictly on the evidence. *Id.* at 156-57, ¶ 14; *State v. Davolt*, 207 Ariz. 191, 206-07, ¶¶ 50-51 (2004). Further, the burden to show presumptive prejudice is "extremely heavy." *State v. Forde*, 233 Ariz. 543, 554, ¶ 13 (2014) (citation omitted). Primarily factual, non-inflammatory news coverage is insufficient to create presumptive prejudice. *State v. Bigger*, 227 Ariz. 196, 200, ¶ 11 (App. 2011). Presumptive prejudice arises only when the publicity is "so unfair, so prejudicial, and so pervasive" as to "permeate[] the proceedings or create[] a 'carnival-like' atmosphere." *Cruz*, 218 Ariz. at 157, ¶ 15 (citations omitted).

¶15 Here, Holmes moved for a change of venue because her case was reported in multiple newspaper articles disseminated in Yavapai County. The articles did not, however, exceed the bounds of normal informational news reporting or create an unusual atmosphere creating presumptive prejudice. Nor does the record reveal actual prejudice. Only one juror reported awareness of the media coverage, and that juror expressly confirmed that her knowledge would not affect her decision-making. As there was neither presumptive nor actual prejudice, the superior court acted within its discretion by declining to change the trial venue.

III. The State presented sufficient evidence to support Holmes' convictions.

¶16 Holmes next contends that the State presented insufficient evidence to support her convictions. We review the sufficiency of the evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). We do not reweigh the evidence or determine witness credibility. *State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007); *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

¶17 Trial evidence is sufficient when reasonable persons could accept it as adequate to show beyond a reasonable doubt that the defendant

committed every element of the charged offense. *Cox*, 217 Ariz. at 357, ¶ 22. Sufficient evidence may be either direct or circumstantial, and it may support differing reasonable inferences. *State v. Anaya*, 165 Ariz. 535, 543 (App. 1990). We will not reverse for insufficient evidence simply because the jury could have reached a different verdict. *State v. Rios*, 255 Ariz. 124, 131, ¶ 26 (App. 2023). We will reverse only if "there is a complete absence of probative facts to support the conviction." *State v. Scott*, 113 Ariz. 423, 424-25 (1976).

**¶18** Here, the State had to establish that Holmes, acting without lawful authority, knowingly controlled Yavapai Block and the Coalition's money with the intent to deprive those organizations of the same. *See* A.R.S. § 13-1802(A)(1). The State met that burden. With respect to Yavapai Block, the State presented evidence that during the time Holmes was responsible for preparing the company's income for deposit, not all the cash was deposited. Holmes emphasizes the paucity of direct evidence tying her to the missing money. But the circumstantial evidence was sufficient to permit reasonable jurors to conclude that Holmes was responsible. She often had unilateral control over the cash and the deposit slips, and cash went missing only during her tenure. Similarly, with respect to the Coalition, the evidence that cash went missing only during the period when Holmes controlled the organization's deposits was sufficient to support her conviction.

**¶19** Contrary to Holmes' contention, the jury was not compelled to acquit her based on the absence of physical evidence and the police's failure to recover stolen monies from her. Physical evidence is not necessary where other evidence suffices to show guilt, *State v. Hall*, 204 Ariz. 442, 454, ¶ 49 (2003), and the jury may infer elements of theft even where the stolen property is never found, *State v. Coleman*, 147 Ariz. 578, 580-81 (App. 1985). Also, contrary to Holmes' contention, the jury was not required to believe her denials of guilt. *See Cox*, 217 Ariz. at 357, ¶ 27 (holding that questions of witness credibility are for the jury). Nor was the jury required to conclude that others with access to the funds committed the thefts. *See Williams*, 209 Ariz. at 231, ¶ 6 (holding that weighing the evidence is for the jury). The jury appropriately convicted Holmes on both counts based on the evidence.

IV.   The prosecutor did not engage in conduct depriving Holmes of a fair trial.

**¶20** Holmes finally contends that she was denied due process based on prosecutorial error. Holmes argues that when the prosecutor

questioned Yavapai Block's controller on direct examination, he asked multiple leading questions summarizing the company president's testimony. She argues that the prosecutor's questions violated Arizona Rule of Evidence 611(c), which prohibits leading questions on direct examination except as necessary to develop the testimony. She further argues that the questions violated Arizona Rule of Evidence 615 and Arizona Rule of Criminal Procedure 9.3, which encourage truthful testimony by precluding witnesses from hearing or otherwise reviewing others' testimony. *See Spring v. Bradford*, 243 Ariz. 167, 170-71, ¶¶ 13-16 (2017). Because Holmes objected to only one of the relevant questions at trial (and that objection was sustained), we review her claim of a pattern of misconduct for fundamental error. *See State v. Speer*, 221 Ariz. 449, 458, ¶ 42 (2009). We detect none.

**¶21** Prosecutorial error "is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial." *State v. Aguilar*, 217 Ariz. 235, 238-39 (App. 2007) (citation and internal quotation marks omitted). Prosecutorial error constitutes fundamental error only when it is "so egregious as to deprive the defendant of a fair trial." *State v. Hernandez*, 170 Ariz. 301, 307 (App. 1991). Here, when questioning Yavapai Block's controller, the prosecutor described the company president's testimony about Holmes' employment dates, the president's practice of depositing the income at the bank, the controller's report to the president about missing funds, and the date of the controller's call to police. To be sure, these questions were improperly leading because they suggested their answers. *See State v. Romero*, ___ Ariz. ___, ___, ¶ 23, 588 P.3d 1123, 1129 (2026). The questions also improperly summarized a different witness' testimony. *See Spring*, 243 Ariz. at 170-71, ¶¶ 13-16. But the defects in the questions did not rise to the level of prosecutorial error depriving the defendant of a fair trial. The questions went only to repetitive background information. We also note that several of the questions' prompts reiterated information potentially helpful to the defense—i.e., that the company did not promptly report the theft and that Holmes did not typically transport the deposits.

**¶22** Further, the questions were asked in front of the jurors, who could consider their phrasing in assessing the controller's credibility. *See Cox*, 217 Ariz. at 357, ¶ 27. The jurors also were instructed not to consider the prosector's statements as evidence, and we presume they followed that instruction. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). The prosecutor's questions, although imperfect, did not amount to reversible error.

## CONCLUSION

**¶23** We affirm Holmes' convictions and the court's imposition of prison and probation.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR